UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KAREN SCALIN, JOSIANE PIQUARD and ROLAND CHERRIER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> SOCIÉTÉ NATIONALE DES CHEMINS DE FER FRANÇAIS, <br><br> Defendant. | Case No. |

## COMPLAINT

Plaintiffs Karen Scalin, Josiane Piquard, and Roland Cherrier, on behalf of themselves and all those similarly situated, state as follows for their complaint:

**I.  INTRODUCTION**

1.  The victims were on their way to the death camps, but even as they were being sent to Auschwitz and Buchenwald, their property was confiscated by the same train company that shoved them into cattle cars and then got paid. At issue in this case are rights in Property taken in violation of international law. This expropriation of property from the targets of genocide occurred in the course of the deportation of Jews and other "undesirables" ("Deportations") by defendant Société Nationale des Chemins de Fer Français ("SNCF') during World War II ("the War").

2.  Plaintiffs seek compensation for these takings of personal property in France during the War. By their attorneys, Plaintiffs bring this action, both individually and on behalf of a class including other Holocaust victims, their heirs and beneficiaries, against SNCF for

compensatory and punitive damages, equitable disgorgement of profits and other relief specified below.

3. As used hereinafter, "Property" means any and all personal property, including cash, securities, silver, gold, jewelry, works of art, musical instruments, clothing, and equipment that was illegally, improperly, and coercively taken from the ownership or control of an individual during the Deportations. Property also includes moneys earned from the sale of such Property, moneys received from the transfer of the Property to the Nazis, and Property, including money and good will, received by SNCF in exchange for such Property.

4. SNCF committed, conspired to commit and aided and abetted others who committed, war crimes and crimes against humanity. Acting with full knowledge, SNCF was complicit in the commission of genocide.

## II. HISTORICAL BACKGROUND

5. Unless otherwise indicated, the "Background" Section of this Complaint is stated upon information and belief, based on published research concerning SNCF's activities during and after the War.

6. During the War, France established and ran holding camps in France. From those camps, 75,000 Jews and tens of thousands of other "undesirables" were shipped to Nazi death camps like Auschwitz and Buchenwald. Less than 3% survived.

7. The first round up of Jews occurred in May 1941 and filled the provincial holding camps. The first round-up in Paris took place between August 20 and 25, 1941, when 4,232 Jews were herded into the holding camp at Drancy, opened by the French government as an internment camp and then, beginning in March 1942, operated as the major transit camp. Drancy was a way-station on the road to Auschwitz.

8. SNCF assembled and ran the Deportation trains. More than 75,000 Jews of all nationalities were sent in 72 convoys to camps like Auschwitz and Buchenwald. The first SNCF train left for Auschwitz on March 27, 1942. The last left on August 17, 1944; even after D-Day, SNCF kept the Deportation trains running.

9. SNCF billed the Nazis per head, per kilometer at standard, third class rates. However, SNCF provided, literally, cattle-car service, stuffing the victims into rail cars that were normally used to transport cattle.

10. The deportees were generally allowed to bring one suitcase or parcel with them when they were herded onto the SNCF trains. Those packages contained the most dear, and the most valuable, possessions of the victims. Once the victims were on the trains, SNCF confiscated the suitcases and other valuables, telling the Plaintiffs that the Property would be returned, yet knowing full well that it would not be. Instead, SNCF either converted the Property to its own benefit, or turned it over to the Nazis in exchange for other Property.

11. Thus was a mutually beneficial relationship established between SNCF and the Nazis. The Nazis received the human fodder for their Final Solution, as well as the victims' Property, all through the collaboration of SNCF.

12. In exchange, SNCF received certain financial and other benefits. The good will SNCF created by this opportunistic arrangement permitted it to survive during the War as an independent entity, a benefit which SNCF's own records show was crucial to it, and which helped SNCF to emerge after the War with its management and corporate structure virtually intact.

13. Furthermore, because of the discrepancy between services provided and payment received, SNCF was able to increase its wartime revenues fraudulently. Those funds – part of

the Property SNCF received in exchange for Property - provided revenues that helped enrich SNCF, and remain as part of its post-war operating capital. To this day, SNCF retains the Property and its benefits.

14. No Property taken by SNCF, or Property received in exchange for such Property, has ever been returned to the Plaintiffs. No Property, including payments for the Deportations, has ever been disgorged by SNCF. No compensation has ever been made to the victims.

## III. THE PARTIES

### A. SNCF

15. Société Nationale des Chemins de Fer français is incorporated and has its principal place of business in France. SNCF is the national railway of France and the operator of all rail passenger lines within France. It was created in 1938 by the consolidation of five existing French regional rail networks and is wholly owned by the French government. Under French law, it is an "établissement public à caractère industriel et commercial," a commercial entity with no immunity. SNCF is one of the 250 largest corporations in the world. As discussed below, SNCF, itself and through its agents and subsidiaries, does business in this State.

### B. Plaintiffs

16. Plaintiff Karen Scalin resides in this District. Her grandparents, Julius and Karolina Bender, were sent from France on an SNCF deportation train, and perished in Auschwitz in November 1942. She believes that her grandparents, like all the victims, had Property with them and that Property was taken.

17. Josiane Piquard is a resident and citizen of France. Her mother, grandmother, two aunts and other relatives were deported and died in Auschwitz. They were deported on SNCF Convoy No. 72 (April 1944), Convoy No. 63 (December 1943), Convoy No. 71 (April 1944) and

4

Convoy No. 59 (September 1943), respectively. She and her sister were hidden in central France and lived in several Catholic orphanages. She was baptized a Catholic during this time and later entered a convent to become a nun. She receives a pension under the Orphan's Fund instituted in 2001 for children who lost parents in the camps. She believes that her mother and the other members of her family had Property that was taken from them during their deportation.

18. Roland Cherrier is a resident and citizen of France. He and his brothers lost two of their grandparents who died in Auschwitz after deportation on SNCF Convoy No. 55 in June 1943. His mother survived the War but is deceased. He believes his grandparents had Property taken from them during the deportation.

## IV. CLASS ACTION ALLEGATIONS

19. This action is brought and may properly be maintained as a class action pursuant to the provisions of Fed. R. Civ. P. 23(a) and (b)(3). The Class includes all those individuals transported by SNCF from camp to camp in France or from France to the Nazi death and slave labor camps during World War II, and their heirs and beneficiaries.

20. The members of the Class on whose behalf Plaintiffs bring this action are too numerous to make joinder of all members of the Class practicable. Although the identities of all individual Class members are unknown at present, they can be ascertained through appropriate discovery and public inquiry.

21. There are questions of fact and law common to the Class that predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are whether:

    a. SNCF wrongfully took gold, money and other personal belongings from Plaintiffs and class members during transit from holding camps in France

        to other camps and from such camps in France to Nazi concentration and slave labor camps;

    b.    SNCF improperly retained or converted Property or exchanged the Property for other Property;

    c.    SNCF improperly transferred the Property to the Nazis in exchange for cash and good will;

    d.    SNCF unjustly benefitted financially from its actions and still benefits today;

    e.    SNCF's actions were in violation of international law; and

    f.    SNCF participated in a common plan or conspiracy to commit crimes under international law.

22. Plaintiffs' claims are typical of claims of other members of the Class, because all such claims arise from SNCF's intentional taking of Property from detainees during the Deportations, and the exchange of Property for revenues, good will and other benefits.

23. Plaintiffs are committed to the vigorous prosecution of their claims and have competent counsel experienced with complex litigation, class action litigation, and litigation related to wrongful conduct during the War.

## V.    JURISDICTION AND VENUE

### A.    Subject Matter Jurisdiction

24. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because all Plaintiffs' claims involve substantial international law and federal questions, and because all Plaintiffs' claims arise under international law enforceable in this Court as federal law.

25. This Court has subject matter jurisdiction pursuant to the Foreign Sovereign Immunities Act 28 U.S.C.§ 1605 (3) ("FSIA," 28 U.S.C. §§ 1330, 1602 *et seq.*) which denies

immunity to foreign states for cases where rights in property have been taken in violation of international law. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and general principles of supplemental jurisdiction.

### B. Personal Jurisdiction

26. This Court has personal jurisdiction over SNCF under the Code of Civil Procedure of the State of Illinois. SNCF does substantial, continuous and systematic business in the State of Illinois and in this District. SNCF sells tickets in the United States on line and through its agents and subsidiaries, Rail Europe Group, Inc. and Rail Europe, Inc., Delaware corporations (collectively, "Rail Europe"). Rail Europe maintains a website for the use of U.S. travel agents in booking tickets on SNCF, and confirms reservations for SNCF tickets immediately. Upon information and belief, Rail Europe is the agent for the sale of all SNCF tickets and rail passes purchased in Illinois. Rail Europe also has a Contact Center using ISO 9001: 2008 certified processes located in Rosemont, Illinois, in this district.

27. SNCF has purposefully availed itself of the privilege of conducting business within the State of Illinois such that it can reasonably anticipate being hauled into district courts located in Illinois in litigation.

28. Personal jurisdiction in this matter also meets the requirements of the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution. SNCF's continuous and systematic business activities in Illinois constitute sufficient minimum contacts with this State to make the exercise by this Court of personal jurisdiction reasonable and consistent with traditional notions of fair play and substantial justice.

29. This Court has personal jurisdiction over SNCF under the FSIA because these are claims as to which no party is entitled to immunity under 28 U.S.C. § 1605-7.

    **C.**    **Venue**

30. Venue is appropriate pursuant to 28 U.S.C. § 1391(f)(3).

**VI.**    **CLAIMS FOR RELIEF**

    **A.**    **First Claim for Relief - Violations of International Law**

31. Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

32. During the War, SNCF, by its own conduct individually took, and in concert with the Nazis, aided and abetted and conspired to take, the Property of Plaintiffs, in violation of international law, both customary and treaty, by taking Property on a discriminatory basis, for no public purpose and without just compensation.

33. The taking of Property and the charging of third-class train fares for victims being sent to their deaths was an integral part of the genocide against the Jews during the War, which is a war crime and a crime against humanity under international law and the law of nations. International law and the law of nations are enforceable in this Court.

34. All legal remedies of any nature in France permitting victims to seek redress against SNCF have been exhausted. Claims brought by Alain Lipietz against SNCF in France were dismissed by the conseil d'etat (the highest court). Following that precedent, all other cases against SNCF (including those brought by class members) have also been dismissed. Thus, all courts in France are closed to any action against SNCF for the restitution of property, the payment of reparations or for the commission of war crimes.

35. There are no other fora available in France and no other programs for SNCF victims to seek redress against SNCF. The French government has established certain

administrative benefits for Holocaust victims. However, these programs are severely limited in scope and do not compensate deportees or their heirs for Property taken on the trains.

      a.    As part of a disability pension program administered by the French Department of Veterans Affairs, French citizens who were actually on the trains or their surviving spouses may receive a disability pension. (Survivors who are citizens of certain other countries, such as the United Kingdom or Belgium have been able to claim benefits under this program.) No children or other heirs of French survivors, including French and American heirs, can receive benefits.

      b.    A French Orphans Fund provides benefits to those who lost one or both parents in the camps and were under 21 years old at the time. That Fund was established in 2000. It has nothing to do with claims against SNCF and has no bearing on property claims of any nature.

      c.    The Commission for the Indemnification of Victims of Spoliation ("CIVS") provides indemnification for property, such as businesses or apartments, taken by reason of antisemitic laws. No restitution is available under this program for property taken on the trains.

      d.    A recent proposed settlement agreement negotiated between the French and American governments would open the French disability program (see ¶35a) to current American citizens who were actually on the trains, or their surviving spouses. In addition, if the survivor or spouse was alive in 1948 and was not a French citizen at their death, then the children (or heirs or estate, standing in the shoes of the survivor), may also apply for benefits under the Disability Fund. If both parents perished in the camps, or other family members such as siblings, perished, no benefits are available. The majority of the victims and class members lost entire families; they would not qualify. SNCF is not a signatory to the settlement and has no obligation to make any reparations or restitution to the victims or class members.

36. SNCF's unlawful and torturous conduct as described herein was done intentionally, maliciously and wantonly, and for the purpose of obtaining revenues for and maintaining the independence of SNCF. Plaintiffs are thereby entitled to an award of punitive damages as well as compensatory damages.

9

37. By reason of the foregoing, Plaintiffs have been damaged in amounts to be determined at the trial of this action, exclusive of interest and the costs of prosecution of this action, and are entitled to an amount of punitive damages also to be determined at the trial of this action.

### B. Second Claim for Relief - Conversion

38. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

39. SNCF has willfully and wrongfully taken, retained and converted the Property and its derivative profits into its own property, and SNCF's exercise of the rights of ownership and control over the Property were and are inconsistent with Plaintiffs' rights, were and are without authorization, and such acts constitute a conversion.

40. By its seizure of the Property, SNCF has injured all Class Members by depriving them of their Property, its use and enjoyment, and any interest and profit which could have been earned thereon.

41. As a result of such conversion, Plaintiffs and other class members are entitled to the return of the Property or compensation therefor, and damages in an amount to be determined at trial.

### C. Third Claim for Relief – Unjust Enrichment

42. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

43. By reason of the forgoing, SNCF has unjustly enriched itself with the derivative profits of such assets and investing, and has benefitted from and retained the value of the Property to this day.

44. By reason of SNCF's conduct as described herein, SNCF has earned profits from its acts committed in violation of international law.

45. By reason of the foregoing, SNCF should be compelled to disgorge the amounts by which it profited from its wrongful conduct in taking Property on and during the operation of its deportation trains during the War and to make restitution to Plaintiffs and the Plaintiff Class in an amount to be determined at the trial of this action, exclusive of interest and the costs of prosecution of this action.

### D. Equitable Tolling and Estoppel

46. No statute of limitations has begun to run on the causes of action stated herein because Plaintiffs and the Plaintiff Class have been kept in ignorance of vital information essential to pursue their claims, without any fault or lack of diligence or due care on their part. Information about the SNCF's participation in wrongdoing has come to light through current research and publications such as the Bachelier Report, and was not available earlier. SNCF only agreed in 2012 to open some of its archives to the general public.

47. Moreover, SNCF's misconduct is continuing. SNCF has not made any reasonable attempt to disgorge its illicit profits or adequately compensate victims and is estopped from interposing any type of time bar defense to these claims.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court:

1. Certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; On the First Claim for Relief, award compensatory and punitive damages to Plaintiffs and the Plaintiff Class;

2. On the Second Claim for Relief, compel SNCF to disgorge the revenues it earned from the taking of Property during the Deportations

3. On the Third Claim for Relief, compel SNCF to disgorge the profits it earned from the Property of the Plaintiffs;

5. On all Claims for Relief, award interest on all amounts awarded including, without limitation, pre-judgment interest as applicable;

6. Award the costs, disbursements and reasonable attorneys' fees incurred in the prosecution of this action; and

7. Grant such other and further relief as the Court shall deem just, equitable and proper.

        Respectfully submitted,

        KAREN SCALIN, JOSIANE PIQUARD and ROLAND CHERRIER


        By:   /s/ Steven P. Blonder
                One of Their Attorneys


Steven P. Blonder (#6215773 - sblonder@muchshelist.com)
Jonathan Loew (#6184157 - jloew@muchshelist.com)
MUCH SHELIST, P.C.
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 521-2000

Harriet Tamen
Tamen Law Offices
212 East 39th Street
New York, NY 10016
(212) 284-5262

Stephen T. Rodd
Abbey Spanier, LLP
212 East 39th Street
New York, NY  10016
(212) 889-3700

Professor Lucille A. Roussin
243 West 99th Street
New York, NY  10025
(212) 877-9746

5647598_1